IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-74

No. 43A21

Filed 17 June 2022

DAWN REYNOLDS-DOUGLASS

v.

KARI TERHARK

Appeal pursuant to N.C.G.S. § 7A-30(2) from the unpublished decision of a divided panel of the Court of Appeals, No. COA-20-112, 2020 WL 7974326 (N.C. Ct. App. Dec. 31, 2020), finding no error in an order entered on 20 September 2019 by Judge Ned W. Mangum in District Court, Wake County. Heard in the Supreme Court on 14 February 2022.

*David G. Omer for plaintiff-appellee.*

*Williams Mullen by Michael C. Lord for defendant-appellant.*

ERVIN, Justice.

¶ 1     This case involves the issue of whether the trial court erred by awarding attorney's fees in an action seeking the recovery of money owed under a contract to purchase real estate which obligated the buyer to pay the seller a due diligence fee and an earnest money deposit. After the buyer breached the real estate contract, the seller brought an action in small claims court for the purpose of recovering the due diligence fee that was owed to her pursuant to that agreement. The real estate

contract also provided that the prevailing party in an action seeking to recover the earnest money deposit was entitled to collect "reasonable attorney's fees" from the opposing party. After the trial court awarded the requested attorney's fees on appeal from a decision of the magistrate in plaintiff's favor, the buyer appealed, arguing that the contract did not constitute an "evidence of indebtedness" pursuant to N.C.G.S. § 6-21.2 and that the requested attorney's fee award lacked sufficient support in the relevant statutory provision. A majority of the Court of Appeals found no error in the challenged attorney's fees award. After careful consideration of the record in light of the applicable law, we affirm the decision of the Court of Appeals.

¶ 2    In mid-2017, plaintiff Dawn Reynolds-Douglass and her husband employed a real estate agent named Dee Love to assist them in listing their home for sale. As part of that process, Ms. Love advised plaintiff and her husband to complete a "Residential Property and Owners' Association Disclosure Statement" as required by Chapter 47E of the General Statutes of North Carolina. Plaintiff and her husband completed the required disclosure statement, except for leaving two items blank, the first of which addressed whether the property was "subject to any utility or other easements, shared driveways, party walls or encroachments" and the second of which addressed whether "any fees [were] charged by the association or by the association's management company in connection with the conveyance or transfer of the lot or property to a new owner."

On 23 July 2017, Ms. Love hosted an open house at which plaintiff's residence could be viewed by potential buyers, including defendant Kari Terhark. On the following day, defendant met with Ms. Love for the purpose of reviewing the disclosure statement that plaintiff and her husband had completed. At the conclusion of the review process, defendant signed each page of the disclosure statement and executed an "Offer to Purchase and Contract" in which she agreed to purchase plaintiff's property for $250,000. The Offer to Purchase and Contract provided, in pertinent part:

> (d) "Purchase Price":
>
>> $250,000.00 paid in U.S. Dollars upon the following terms:
>>
>> $2,000.00 BY DUE DILIGENCE FEE made payable and delivered to Seller by the Effective Date.
>>
>> . . . .
>>
>> $2,500.00 BY (ADDITIONAL) EARNEST MONEY DEPOSIT made payable and delivered to Escrow Agent named in Paragraph 1(f) by cash, official bank check, wire transfer or electronic transfer no later than August 14, 2017 . . . .
>>
>> . . . .
>>
>> $245,500.00 BALANCE of the Purchase Price in cash at Settlement (some or all of which may be paid with the proceeds of a new loan).

In addition, the Offer to Purchase and Contract provided:

(e) "Earnest Money Deposit": The Initial Earnest Money Deposit, the Additional Earnest Money Deposit and any other earnest monies paid or required to be paid in connection with this transaction, collectively the "Earnest Money Deposit," shall be deposited and held in escrow by Escrow Agent until Closing, at which time it will be credited to Buyer, or until this Contract is otherwise terminated. . . .  In the event of breach of this Contract by Buyer, the Earnest Money Deposit shall be paid to Seller as liquidated damages and as Seller's sole and exclusive remedy for such breach, but without limiting Seller's rights under Paragraphs 4(d) and 4(e) for damage to the Property or Seller's right to retain the Due Diligence Fee.  It is acknowledged by the parties that payment of the Earnest Money Deposit to Seller in the event of a breach of this Contract by Buyer is compensatory and not punitive, such amount being a reasonable estimation of the actual loss that Seller would incur as a result of such breach.  The payment of the Earnest Money Deposit to Seller shall not constitute a penalty or forfeiture but actual compensation for Seller's anticipated loss, both parties acknowledging the difficulty [of] determining Seller's actual damages for such breach.  If legal proceedings are brought by Buyer or Seller against the other to recover the Earnest Money Deposit, the prevailing party in the proceeding shall be entitled to recover from the non-prevailing party reasonable attorney fees and court costs incurred in connection with the proceeding.

. . . .

(i) "Due Diligence Fee": A negotiated amount, if any, paid by Buyer to Seller with this Contract for Buyer's right to terminate the Contract for any reason or no reason during the Due Diligence Period.  It shall be the property of Seller upon the Effective Date and shall be a credit to Buyer at Closing.  The Due Diligence Fee shall be non-refundable except in the event of a material breach of this Contract by Seller . . . .

On the same date, plaintiff and her husband accepted defendant's offer by initialing each page of the Offer to Purchase and Contract and signing the final page. After both parties had executed the Offer to Purchase and Contract, plaintiff and her husband removed their residence from the real estate market in anticipation of closing.

¶ 4 On 27 July 2017, defendant sent an e-mail to Ms. Love in which she stated that she intended to cancel the contract unless plaintiff and her husband agreed to reduce the purchase price by $5,500. In response, Ms. Love told defendant that she was in breach of the contract that she had made with plaintiff and plaintiff's husband. Defendant did not pay the $2,000 due diligence fee or the $2,500 earnest money deposit fee that were due to plaintiff and plaintiff's husband under the contract, with further negotiations that were intended to facilitate a closing ultimately proving unsuccessful.

¶ 5 On 29 September 2017, plaintiff, proceeding *pro se*, filed a complaint against defendant in small claims court seeking to recover the $2,000 due diligence fee. On 30 October 2017, the magistrate entered a judgment in favor of plaintiff and against defendant in the amount of $2,000. After defendant noted an appeal to the district court from the magistrate's judgment, the matter was referred to arbitration on 24 January 2018, with the arbitrator ultimately entering an award in the amount of $2,000 in favor of plaintiff. On 26 January 2018, defendant filed a separate claim

against plaintiff in small claims court in which she sought $4,500 in damages and alleged that plaintiff had breached the purchase contract and was in "violation of the Property Disclosure Act" and in "violation of form 352-T," with plaintiff having retained an attorney in light of the filings of defendant's separate claim.

¶ 6        On or about 27 April 2018, plaintiff, acting through counsel, filed an amended complaint in which she sought to recover $2,000 for non-payment of the due diligence fee; $2,500 in damages for non-payment of the earnest money deposit; attorney's fees and court costs; and $9,000 in compensatory damages, an amount which plaintiff claimed to be the "reasonable difference between (i) the purchase price of the Property pursuant to the Agreement and (ii) the market value of the Property after it had to be re-listed." On 29 June 2018, defendant, who was also acting through an attorney at this point in the litigation, filed an answer to plaintiff's amended complaint. On 20 December 2018, plaintiff filed a motion seeking the entry of summary judgment in her favor, with defendant having filed a cross-motion seeking summary judgment in her own favor on 4 February 2019.

¶ 7        On 26 February 2019, the trial court entered an order granting summary judgment in favor of plaintiff. On 19 September 2019, plaintiff filed a motion seeking to have the trial court determine the amount of damages that she was entitled to recover and an application seeking an award of $15,564.74 in fees and costs, including attorney's fees, with plaintiff's counsel having asserted in an attached affidavit that

plaintiff had incurred $13,067.70 in attorney's fees and $577.04 in court costs in prosecuting this action and $1,920 in attorney's fees relating to a bankruptcy petition that defendant had also filed. On 20 September 2019, the trial court entered an order finding that plaintiff was entitled to recover $18,343.92 from defendant, including $2,000 relating to the due diligence fee; $2,500 relating to the earnest money deposit; $776.22 in pre-judgment interest relating to the due diligence fee and earnest money deposit; and $13,067.70 in attorney fees. Defendant noted an appeal to the Court of Appeals from the trial court's order.

¶ 8        In seeking relief from the trial court's order before the Court of Appeals, defendant, proceeding *pro se*, argued that the trial court had erred by (1) granting summary judgment in plaintiff's favor in spite of the existence of genuine issues of material fact concerning the extent to which plaintiff had complied with the Residential Property Disclosure Act; (2) denying defendant's summary judgment motion; and (3) finding that plaintiff was entitled to recover attorney's fees. In rejecting defendant's challenge to the trial court's decision to enter summary judgment in plaintiff's favor with respect to the merits of plaintiff's claim, the Court of Appeals held that the trial court had correctly concluded that there were no genuine issues of material fact concerning the extent to which plaintiff was entitled to recover the due diligence fee and earnest money deposit from defendant. *Reynolds-Douglass v. Terhark*, No. COA-20-112, 2020 WL 7974326, at *2 (N.C. Ct. App. Dec.

31, 2020) (unpublished). In reaching this result, the Court of Appeals noted that plaintiff had filled out a standard disclosure statement; that defendant had "attested that she had received and examined [the s]tatement by signing each page, including the pages upon which [the inadvertently missing items] appeared"; that defendant had been "given the opportunity to read and review both documents"; that defendant had "attested that she did so" without having sought clarification regarding the statement before making an offer to purchase the property; and that defendant "did not argue that the Disclosure Statement was invalid until well after litigation had commenced in this matter." *Reynolds-Douglass*, 2020 WL 7974326, at \*3.

¶ 9 In rejecting defendant's challenge to the trial court's attorney's fees award, the Court of Appeals held that the trial court had correctly awarded $13,067.70 in attorney's fees to plaintiff. *Id.* After noting that a party attempting to overturn an award of attorney's fees must prove that the trial court had abused its discretion, the Court of Appeals determined that defendant had not "challenge[d] the amount of the attorney's fees award, only the award itself." *Id.* According to the Court of Appeals, the trial court was authorized to award attorney's fees in this case pursuant to N.C.G.S. § 6-21.2, which provides that "parties to 'any note, conditional sale contract or other evidence of indebtedness' [can] recover attorney's fees resulting from a breach of the same, 'not in excess of fifteen percent (15%) of the outstanding balance owing.'" *Reynolds-Douglass*, 2020 WL 7974326, at \*4 (citing N.C.G.S. § 6-21.2). In

the Court of Appeals' view, the Offer to Purchase and Contract, which obligated defendant to pay the due diligence fee and earnest money deposit to plaintiff and provided that, "[i]f legal proceedings [we]re brought by Buyer or Seller against the other to recover the Earnest Money Deposit, the prevailing party in the proceeding shall be entitled to recover from the non-prevailing party reasonable attorney's fees and costs incurred in connection with the proceeding," constituted an "evidence of indebtedness" for purposes of N.C.G.S. § 6-21.2, so that an award of attorney's fees was authorized in this instance. *Reynolds-Douglass*, 2020 WL 7974326, at *3–4. In reaching this conclusion, the Court of Appeals relied upon *Stillwell Enters., Inc. v. Interstate Equip. Co.*, 300 N.C. 286 (1980), in which this Court determined that "[t]he term 'evidence of indebtedness' as used in N.C.[G.S.] § 6-21.2 refers to any printed or written instrument, signed or otherwise executed by the obligor(s), which evidences on its face a legally enforceable obligation to pay money." *Reynolds-Douglass*, 2020 WL 7974326, at *4 (quoting *Stillwell*, 300 N.C. at 294). In light of the fact that the Offer to Purchase and Contract in this case "was a printed instrument signed by both parties" which "on its face evidenced a legally enforceable obligation for Defendant to pay the Due Diligence fee and Earnest Money Deposit to Plaintiff," the Court of Appeals reasoned that the contract constituted an "evidence of indebtedness" for purposes of N.C.G.S. § 6-21.2, so that the trial court was authorized to make an award of attorney's fees in plaintiff's favor. *Id.*

¶ 10    Although Judge Murphy agreed with his colleagues in concluding that the trial court had not erred by granting summary judgment in plaintiff's favor, he disagreed with his colleagues' decision to uphold the trial court's attorney's fees award. *Reynolds-Douglass*, 2020 WL 7974326, at \*5 (Murphy, J., concurring, in part, and dissenting, in part).  As an initial matter, Judge Murphy concluded that the Offer to Purchase and Contract did not authorize the recovery of attorney's fees because the appropriateness of such an award hinged upon whether "legal proceedings [we]re brought . . . to recover the Earnest Money Deposit" and because this proceeding had initially been brought for the purpose of recovering the due diligence fee rather than the earnest money deposit.  *Reynolds-Douglass*, 2020 WL 7974326, at \*5–6.

¶ 11    In addition, Judge Murphy concluded that N.C.G.S. § 6-21.2 did not authorize an award of attorney's fees in this case given that the Offer to Purchase and Contract did not constitute an "evidence of indebtedness" or a "note or conditional sale contract" as required by the relevant statutory provision.  *Reynolds-Douglass*, 2020 WL 7974326, at \*6.  According to Judge Murphy, the majority at the Court of Appeals had erroneously extended *Stillwell* to encompass a real estate contract even though the principle enunciated in *Stillwell* was "only relevant for commercial transactions" in light of our statements that the definition of an "evidence of indebtedness" adopted in that case did "no violence to any of the statute's specific provisions and accords well with its general purpose to validate a debt collection remedy expressly agreed upon

by contracting parties" and that N.C.G.S. § 6-21.2 was intended to "supplement those principles of law generally applicable to commercial transactions." *Reynolds-Douglass*, 2020 WL 7974326, at *7 (quoting *Stillwell*, 300 N.C. at 293–94). As a result, Judge Murphy would have held that the Offer to Purchase and Contract at issue in this case was not an "evidence of indebtedness" for purposes of *Stillwell* and that his colleagues' determination to the contrary was "overbroad" and would authorize an award of attorney's fees pursuant to "every contract where one party is to pay money [as an] evidence of indebtedness." *Id.*

¶ 12        In the same vein, Judge Murphy would have held that the Offer to Purchase and Contract was not an "evidence of indebtedness" for purposes of the relevant statutory provision given that "[t]he general purpose of N.C.G.S. § 6-21.2 is to 'validate a debt collection remedy expressly agreed upon by contracting parties'" and that, at least in his view, a contract to purchase real estate did not fit within the confines of this stated purpose. *Reynolds-Douglass*, 2020 WL 7974326, at *8. Finally, Judge Murphy noted that, even if the Offer to Purchase and Contract in this case constituted an "evidence of indebtedness" for purposes of N.C.G.S. § 6-21.2, the amount of attorney's fees awarded in this case should be capped at 15% of the $2,000 due diligence fee, making the trial court's decision to award a total of $13,067.70 in

attorney's fees unlawfully excessive. *Id.* Defendant noted an appeal to this Court from the Court of Appeals' decision based upon Judge Murphy's dissent.[1]

¶ 13 In seeking relief from the Court of Appeals' decision before this Court, defendant, who is currently represented by counsel, begins by arguing that the Offer to Purchase and Contract did not authorize an award of attorney's fees in plaintiff's favor given that, while the contract authorized such an award in an action brought "to recover the Earnest Money Deposit," the present case had been initiated for the purpose of recovering the due diligence fee. In view of the fact that she had never paid the earnest money deposit to plaintiff, defendant contends that there had never been an earnest money deposit that plaintiff was entitled to recoup and that the $2,500 amount that plaintiff was authorized to collect pursuant to the Offer to Purchase and Contract relating to the earnest money deposit constituted nothing more than an award of liquidated damages.

¶ 14 Secondly, defendant argues that the Offer to Purchase and Contract did not constitute an "evidence of indebtedness" for purposes of N.C.G.S. § 6-21.2 as defined in *Stillwell* given that the relevant statutory provision "applies to 'supplement those principles of law generally applicable to commercial transactions' and is only relevant for financial debt instruments akin to promissory notes and conditional sale

---

[1] Although defendant sought discretionary review of the Court of Appeals' decision with respect to certain additional issues, this Court denied defendant's petition.

contracts." In defendant's view, neither the due diligence fee nor the earnest money deposit resemble the recurring rental payments provided for in the lease agreement that was at issue in *Stillwell*, with the essential thrust of the Offer to Purchase and Contract as a real estate agreement precluding it from being "an instrument of indebtedness within the scope of Section 6-21.2[ ]." As further support for this contention, defendant directs our attention to *Forsyth Mun. Alcoholic Beverage Control Bd. v. Folds*, 117 N.C. App. 232, 238 (1994), which she describes as holding that attorney's fees could not be collected in an action arising from the breach of a contract for the sale of real property, and *Calhoun v. WHA Med. Clinic, PLLC*, 178 N.C. App. 585, 604 (2006), in which the Court of Appeals analyzed whether an employer-employee agreement came within the scope of N.C.G.S. § 6-21.2. As a result, defendant contends that the Court of Appeals' determination that the Offer to Purchase and Contract constituted an "evidence of indebtedness" conflicts with the purpose sought to be served by N.C.G.S. § 6-21.2, which is to "validate a debt collection remedy expressly agreed upon by contracting parties." *Stillwell*, 300 N.C. at 294.

¶ 15    Thirdly, defendant argues that, in accordance with the literal language of the Offer to Purchase and Contract, she cannot be held liable to plaintiff for the earnest money deposit given that the deposit was to be "payable and delivered to Escrow Agent." Defendant asserts that her obligation to pay the earnest money deposit had

not "matured" at the time that the agreement was cancelled on 27 July 2017 since the earnest money deposit was not due to be paid until 14 August 2017. Defendant also notes that N.C.G.S. § 6-21.2(5) requires a party seeking to recover attorney's fees to provide notice to the debtor "that the provisions relative to payment of attorneys' fees in addition to the 'outstanding balance' [of the debt] shall be enforced" and contends that plaintiff had failed to provide proper notice that she intended to seek an award of attorney's fees in this action. Finally, defendant claims that Judge Murphy correctly concluded that the trial court's decision to award a total of $13,067.70 in attorney's fees violated the statutory cap on attorney's fees awards set out in N.C.G.S. § 6-21.2.

¶ 16 In seeking to persuade us to affirm the Court of Appeals' decision, plaintiff begins by arguing that defendant's contentions that the earnest money deposit was owed to the escrow agent rather than plaintiff, that plaintiff's claim for the earnest money deposit had not "matured," and that plaintiff had failed to provide proper notice of its attorney's fees claim were not properly before this Court given that these issues had not been mentioned by either the majority or dissenting opinions at the Court of Appeals, citing N.C. R. App. P. 16(b) (providing that, "[w]hen the sole ground of the appeal of right is the existence of a dissent in the Court of Appeals," this Court's review "is limited to a consideration of those issues that are . . . specifically set out in the dissenting opinion as the basis for that dissent"). In addition, plaintiff contends

that she was allowed to collect attorney's fees under the contract pursuant to N.C.G.S. § 6-21.2 given that the Offer to Purchase and Contract expressly allowed for the recovery of attorney's fees by "the prevailing party" in a proceeding brought to recover the earnest money deposit.

¶ 17 According to plaintiff, defendant's contention that the Offer to Purchase and Contract does not constitute an "evidence of indebtedness" as defined in *Stillwell* is "inconsistent with both established case law and the plain language of" N.C.G.S. § 6-21.2. More specifically, plaintiff contends that the Offer to Purchase and Contract is "(i) a printed or written instrument, (ii) signed or otherwise executed by the obligor(s), (iii) which evidences on its face a legally enforceable obligation to pay money," with this being all that is required of an "evidence of indebtedness" in accordance with *Stillwell*, 300 N.C. at 294. In plaintiff's view, defendant's assertion that N.C.G.S. § 6-21.2 only applies to "commercial" agreements lacks merit given that nothing in the relevant statutory language limits the applicability of N.C.G.S. § 6-21.2 to commercial agreements, with plaintiff having pointed to the decisions of the Court of Appeals in *Crist v. Crist*, 145 N.C. App. 418 (2001) (holding that a promissory note provided in the context of a domestic relations dispute was subject to N.C.G.S. § 6-21.2), and *Four Seasons Homeowners Ass'n, Inc. v. Sellers*, 72 N.C. App. 189, 192 (1984) (holding that a "Declaration of Covenants, Conditions and Restrictions" applicable to a subdivision constituted an "evidence of indebtedness" for purposes of

N.C.G.S. § 6-21.2), as further support for this contention. According to plaintiff, treating the Offer to Purchase and Contract as an "evidence of indebtedness" is "directly" consistent with the purpose sought to be served by N.C.G.S. § 6-21.2, which is intended to "validate a debt collection remedy expressly agreed upon by contracting parties." *Stillwell*, 300 N.C. at 294.

¶ 18    Finally, plaintiff asserts that she is entitled to retain the full amount of the trial court's attorney's fees award, with the $13,067.70 amount set out in the trial court's order not being excessive given that she had incurred these fees in the course of defending the judgment that she had previously obtained before the magistrate and that was affirmed multiple times throughout defendant's subsequent appeals. More specifically, plaintiff asserts that, although she represented herself in the initial small claims proceeding before the magistrate and in the subsequent arbitration proceeding, she had decided that she needed to hire an attorney after defendant sought relief from the magistrate's decision and the arbitrator's award and asserted separate claims against plaintiff. In the absence of an award of attorney's fees "for time expended in defense of" her judgment, plaintiff contends that it would not have been "economically feasible . . . to try and preserve that judgment," citing *City Fin. Co. of Goldsboro v. Boykin*, 86 N.C. App. 446, 449 (1987) (holding that, "[u]pon a finding that defendants were entitled to attorney's fees in obtaining their judgment, any effort by defendants to protect that judgment" during subsequent appeals "should

likewise entitle them to attorney's fees"), and *Eley v. Mid/East Acceptance Corp. of N.C.*, 171 N.C. App. 368, 377 (2005) (holding that, "because plaintiff was entitled to attorneys' fees for hours expended at the trial level, we hold plaintiff is entitled to attorneys' fees on appeal, especially in light of the limited amount of money at issue in the litigation"). As a result, plaintiff urges us to affirm the Court of Appeals' decision in its entirety.

¶ 19        According to well-established North Carolina law, "to overturn the trial judge's determination on the issue of attorneys' fees, the defendant must show an abuse of discretion," unless the "appeal presents a question of statutory interpretation," in which case "full review is appropriate," with the trial court's conclusions of law being subject to de novo review. *Finch v. Campus Habitat, L.L.C.*, 220 N.C. App. 146, 147 (2012) (quoting *Bruning & Federle Mfg. Co. v. Mills*, 185 N.C. App. 153, 155–56 (2007)). As a result, we will decide any issues of statutory construction de novo while evaluating the nature and extent of any statutorily authorized attorney's fees awards for an abuse of discretion.

¶ 20        "[T]he general rule [in North Carolina] has long obtained that a successful litigant may not recover attorneys' fees, whether as costs or as an item of damages, unless such a recovery is expressly authorized by statute." *Stillwell*, 300 N.C. at 289 (citing *Hicks v. Albertson*, 284 N.C. 236 (1973)). According to N.C.G.S. § 6-21.2, which authorizes an award of attorney's fees in certain actions,

> [o]bligations to pay attorney['s] fees upon any note, conditional sale contract or other evidence of indebtedness, in addition to the legal rate of interest or finance charges specified therein, shall be valid and enforceable, and collectible as part of such debt, if such note, contract or other evidence of indebtedness be collected by or through an attorney at law after maturity, subject to the following provisions:
>
> (1)    If such note, conditional sale contract or other evidence of indebtedness provides for attorney['s] fees in some specific percentage of the "outstanding balance" as herein defined, such provision and obligation shall be valid and enforceable up to but not in excess of fifteen percent (15%) of said "outstanding balance" owing on said note, contract or other evidence of indebtedness.
>
> (2)    If such note, conditional sale contract or other evidence of indebtedness provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the "outstanding balance" owing on said note, contract or other evidence of indebtedness.

N.C.G.S. § 6-21.2 (2021).  As a result, N.C.G.S. § 6-21.2 creates an exception to the general rule providing that each party to civil litigation is responsible for bearing his or her own attorney's fees applicable to "any note, conditional sale contract, or other evidence of indebtedness."  For that reason, the next issue that we must address is whether the Offer to Purchase and Contract comes within the ambit of N.C.G.S. § 6-21.2.

After carefully considering the record and the applicable law, we hold that the majority at the Court of Appeals correctly concluded that the Offer to Purchase and

Contract at issue in this case constituted an "evidence of indebtedness" for purposes of N.C.G.S. § 6-21.2. In *Stillwell*, 300 N.C. at 287, this Court examined an agreement pursuant to which the defendant had leased a road scraper to the plaintiff. According to the lease agreement, the plaintiff was required to make "monthly rental payments" to the defendant, with the plaintiff "further agree[ing] to pay to lessor a reasonable attorney's fee if the obligation evidenced hereby be collected by an attorney at law after maturity." *Id.* at 289. After granting summary judgment in the defendant's favor following the plaintiff's refusal to make payments required under the lease, the trial court awarded over $24,000 to the defendant, with this amount having included more than $2,000 in attorney's fees. *Id.* at 288. Although the Court of Appeals vacated the trial court's attorney's fee award "on the grounds that the lease was not the type of agreement which would entitle defendant to recover for attorneys' fees under the general provisions of [N.C.]G.S. [§] 6-21.2," this Court reinstated the trial court's decision on the grounds that the lease agreement did, in fact, constitute an "evidence of indebtedness" for purposes of N.C.G.S. § 6-21.2. *Id.* at 289, 294.

¶ 22    In construing the reference to an "evidence of indebtedness" contained in N.C.G.S. § 6-21.2, we began by acknowledging that we were required to "give that interpretation to the term at issue which best harmonizes with the language, spirit, and intent of the act in which it appears." *Id.* at 292 (citing *Stevenson v. City of Durham*, 281 N.C. 300 (1972)). After noting that N.C.G.S. § 6-21.2 had "become

effective on the same date as the Uniform Commercial Code," we concluded that the

relevant statutory provision "was intended to supplement those principles of law

generally applicable to commercial transactions,"[2] *id*. at 293 (cleaned up), before

holding that

> the term "evidence of indebtedness" in N.C.G.S. § 6-21.2 is
> intended to encompass more than security agreements or
> traditional debt financing arrangements. It is of course
> clear that a "note" or "conditional sale contract" is the most
> common type of "evidence of indebtedness" contemplated
> by the statute; indeed, it is in connection with these types
> of agreements that attorneys' fee provisions are most
> commonly employed. However, the express terms of
> Section 5 of the statute, along with the terms employed in
> other provisions, demonstrate that G.S. 6-21.2 applies not
> only to notes and conditional sale contracts, but also to
> such "other evidence of indebtedness" as "other writings
> evidencing an unsecured debt" or "any other such security
> agreement which evidences both a monetary obligation and
> a lease of specific goods." N.C.G.S. § 6-21.2(5). We agree,
> therefore, that "these provisions indicate, either explicitly
> or implicitly, that an evidence of indebtedness is a writing
> which acknowledges a debt or obligation and which is
> executed by the party obligated thereby." More
> specifically, we hold that the term "evidence of
> indebtedness" as used in N.C.G.S. § 6-21.2 has reference to
> any printed or written instrument, signed or otherwise
> executed by the obligor(s), which evidences on its face a
> legally enforceable obligation to pay money. Such a
> definition, we believe, does no violence to any of the
> statute's specific provisions and accords well with its

---

[2] The fact that a particular statutory provision was enacted in part to "supplement" the law relating to "commercial transactions" does not, as matter of logic, mean that the application of the relevant statutory provision should be limited to such transactions in the event that the literal language of the statute suggests that it should be given a broader scope.

> general purpose to validate a debt collection remedy
> expressly agreed upon by contracting parties.
>
> Viewed in light of this definition, defendant's lease
> agreement with plaintiff is obviously an "evidence of
> indebtedness." The contract acknowledges a legally
> enforceable obligation by plaintiff-lessee to remit rental
> payments to defendant-lessor as they become due, in
> exchange for the use of the property which is the subject of
> the lease. The contract, including the provision in
> Paragraph 21 for attorneys' fees, is in writing and is
> executed by the parties obligated under its terms. Plaintiff
> has made no assertion that the contract represents
> anything less than an arm's length transaction
> consummated by mutual agreement between the
> parties. Under these circumstances, we see no reason why
> the obligation by plaintiff to pay attorneys' fees incurred by
> defendant upon collection of the debts arising from the
> contract itself should not be enforced to the extent allowed
> by N.C.G.S. § 6-21.2.

*Id*. at 293–95 (cleaned up). Thus, the appropriate definition of an "evidence of

indebtedness" for purposes of N.C.G.S. § 6-21.2 is the one that this Court enunciated

in *Stillwell*.

¶ 23    As the Court of Appeals recognized, the Offer to Purchase and Contract at issue

in this case was signed by both parties and, on its face, evidences a legally enforceable

obligation that defendant pay the plaintiff both the due diligence fee and the earnest

money deposit. As was the case in *Stillwell*, there has been "no assertion that the

contract represents anything less than an arm's length transaction consummated by

mutual agreement between the parties." *See Stillwell*, 300 N.C. at 294. In light of

this set of circumstances, there is no reason for treating the attorney's fees provision

contained in the Offer to Purchase and Contract as anything other than an "evidence of indebtedness" that is enforceable pursuant to N.C.G.S § 6-21.2.

¶ 24    A careful examination of the language in which N.C.G.S. § 6-21.2 is couched, the circumstances surrounding its enactment, and the subsequent decisions construing the relevant statutory language provides no support for defendant's contention that N.C.G.S. § 6-21.2 does not apply outside the context of a commercial agreement. As we noted in *Stillwell*, "[t]he statute, being remedial, 'should be construed liberally to accomplish the purpose of the Legislature and to bring within it all cases fairly falling within its intended scope.'" 300 N.C. at 293 (quoting *Hicks v. Albertson*, 284 N.C. 236, 239 (1973)). For that reason, this Court has previously rejected any contention that N.C.G.S. § 6-21.2 should be construed narrowly. Moreover, while our opinion in *Stillwell* did indicate that the "legislative history [of N.C.G.S. § 6-21.2] demonstrate[d] that it was intended to supplement those principles of law generally applicable to commercial transactions," we did not hold that the relevant statutory language only applied in the context of a commercial transaction, note that *Stillwell* expressly rejected such a limited reading of the relevant statutory language, and reiterate that this Court described N.C.G.S. § 6-21.2 as having been "enacted to amend certain provisions of the State's Uniform Commercial Code 'and other related statutes.'" *Id.* at 293 (quoting Chapter 562 of the 1967 Session Laws). As a result, *Stillwell* reflects a much more expansive interpretation of the relevant

statutory language, pursuant to which "the term 'evidence of indebtedness' as used in [N.C.]G.S. [§] 6-21.2 has reference to any printed or written instrument, signed or otherwise executed by the obligor(s), which evidences on its face a legally enforceable obligation to pay money," *id.* at 294, than that advocated for by defendant.

As we have already noted, defendant has directed our attention to *Forsyth Mun. Alcoholic Beverage Control Bd. v. Folds*, 117 N.C. App. 232, 238 (1994), which she describes as holding that attorney's fees awards are not available in actions arising from the breach of a contract for the sale of real property. In that case, the Court of Appeals stated that:

> As a general rule contractual provisions for attorney's fees are invalid in the absence of statutory authority. This is a principle that has long been settled in North Carolina and fully reviewed by our Supreme Court in *Stillwell . . . .*
>
> This Court has recently enunciated an exception to that principle in the case of separation agreements in particular, *Edwards v. Edwards*, 102 N.C. App. 706, 403 S.E.2d 530, *cert. denied* 329 N.C. 787, 408 S.E.2d 518 (1991); *Bromhal v. Stott*, 116 N.C. App. 250, 447 S.E.2d 481 (1994) (Greene, J. dissenting in part), and indeed in the case of settlement agreements in general. *Carter v. Foster*, 103 N.C. App. 110, 404 S.E.2d 484 (1991).
>
> Nevertheless, we know of no basis in North Carolina law for the allowance of attorney's fees in a dispute arising out of a contract for the sale of real property, as is involved in this case. Therefore, on the basis of those well-settled principles, we reverse the judgment of the trial court insofar as it allowed attorney's fees to the plaintiffs . . . .

*Id.* at 238. In addition, defendant relies upon *Calhoun v. WHA Med. Clinic, PLLC*, 178 N.C. App. 585, 604 (2006), in which the Court of Appeals attempted to determine whether N.C.G.S. § 6-21.2 allowed for the collection of attorney's fees in an action relating to the breach of an employer-employee agreement. As a result of the fact that the trial court had "made no findings of fact [as to] whether the contract at issue [wa]s a 'printed or written instrument, signed or otherwise executed by the obligor(s), which evidences on its face a legally enforceable obligation to pay money' or whether this contract relates to commercial transactions" as required by *Stillwell*, the Court of Appeals remanded that case to the trial court for further findings of fact. *Id.* at 604–05. In view of the fact that neither of these decisions purports to alter the definition of an "evidence of indebtedness" set out in *Stillwell* or addresses claims for the recovery of specific fees of the sort that are at issue in this case, neither of them supports defendant's argument that N.C.G.S. § 6-21.2 has no application outside the context of a commercial agreement.[3]

---

[3] As an aside, we note that nothing in either the relevant statutory language or in *Stillwell* suggests that any sort of transaction or category of transactions is categorically excluded from the definition of an "evidence of indebtedness" for which an award of attorney's fees is authorized pursuant to N.C.G.S. § 6-21.2. Instead, the test for determining whether a particular instrument is or is not an "evidence of indebtedness" is the more generic one set out in *Stillwell*. Similarly, we note that *Stillwell* involved a contract for a lease of equipment, which does not fall within the category of "notes, securities, mortgages, [or] deeds of trust." *See also Four Seasons Homeowners Ass'n, Inc. v. Sellers*, 72 N.C. App. 189, 192 (1984) (holding that a "Declaration of Covenants, Conditions and Restrictions" signed by homeowners in a subdivision was an "evidence of indebtedness" pursuant to N.C.G.S. § 6-21.2); *Crist v. Crist*, 145 N.C. App. 418 (2001) (holding that a note provided in the context of a domestic relations dispute was subject to N.C.G.S. § 6-21.2).

¶ 26        Defendant's other arguments concerning the applicability of N.C.G.S. § 6-21.2 to the circumstances at issue in this case are equally unavailing.  Although plaintiff attempted to recover the due diligence fee in her initial small claims action, she restated her pleadings on appeal to assert a claim for the earnest money deposit as well.  As a result, this action clearly involves a "legal proceeding[ ] . . . brought by Buyer or Seller against the other to recover the Earnest Money Deposit" in which plaintiff is authorized to seek and obtain an award of attorney's fees.

¶ 27        Moreover, as plaintiff notes, defendant's contentions relating to the identity of the party to whom the earnest money deposit was due, the "maturity" of plaintiff's claim for the earnest money deposit, and the absence of notice were not mentioned in either of the opinions filed at the Court of Appeals and are not properly before the Court for that reason.  In addition, none of those arguments have any substantive merit.  Although the Offer to Purchase and Contract did provide that the earnest money deposit should be made "payable and delivered to Escrow Agent," defendant's failure to make the required payment to the escrow agent constituted a breach of contract sufficient to trigger plaintiff's right to recover the earnest fee deposit from defendant as liquidated damages.  The same provision of the contract defeats defendant's contention that plaintiff's right to recover the amount of the earnest money deposit had not yet "matured."  Finally, defendant is not entitled to any relief from the trial court's attorney's fees award based upon an alleged lack of notice given

that defendant continued to participate in the litigation of this case before the trial court without objecting on the basis of an alleged lack of notice after having been informed in the amended complaint that plaintiff sought to obtain an award of attorney's fees from defendant.

Finally, we hold that the trial court did not err in awarding $13,067.70 in attorney's fees to plaintiff given that the relevant fees were incurred in the course of defending the judgment that plaintiff had initially received from the magistrate. In *City Fin. Co. of Goldsboro*, 86 N.C. App. at 449, the Court of Appeals held that the trial court had erred by refusing to award additional attorney's fees that the defendants had incurred while defending a judgment that they had obtained in an action brought pursuant to N.C.G.S. § 75-1.1 from a motion for relief from judgment pursuant to N.C.G.S. § 1A-1, Rule 60, on the theory that, "[u]pon a finding that defendants were entitled to attorney's fees in obtaining their judgment, any effort by defendants to protect that judgment should likewise entitle them to attorney's fees." In reaching this conclusion, the Court of Appeals noted that this Court had previously upheld an award of attorney's fees pursuant to N.C.G.S. § 6-21.1(a) on the theory that

> [t]he obvious purpose of this statute is to provide relief for a person who has sustained injury or property damage in an amount so small that, if he must pay his attorney out of his recovery, he may well conclude that [it] is not economically feasible to bring suit on his claim. In such a situation the Legislature apparently concluded that the defendant, though at fault, would have an unjustly superior bargaining power in settlement negotiations. . . .

> This statute, being remedial, should be construed liberally
> to accomplish the purpose of the Legislature and to bring
> within it all cases fairly falling within its intended scope.

*City Fin. Co. of Goldsboro*, 86 N.C. App. at 449–50 (second and third alterations in original) (quoting *Hicks v. Albertson*, 284 N.C. 236, 239 (1973)); *see also Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 76 (2000) (allowing the consideration of a request for an award of attorney's fees on remand in reliance upon *City Fin. Co. of Goldsboro*); *Eley v. Mid/East Acceptance Corp. of N.C., Inc.,* 171 N.C. App. 368 (2005); *Garlock v. Henson*, 112 N.C. App. 243, 247 (1993). Similarly, in this case, it "would not have been economically feasible," *id.* at 450, for plaintiff to continue to defend the judgment that she had obtained before the magistrate if the trial court lacked the authority to award attorney's fees in connection with the proceedings before the district court, with a contrary determination necessarily placing plaintiff in the position of either incurring legal fees in excess of the judgment amount in order to defend it or abandoning her attempts to seek relief based upon defendant's breaches of contract. As a result, in light of the general principle enunciated by the Court of Appeals in *City Fin. Co. of Goldsboro* and upheld by this Court in *Gray*, the trial court did not err by awarding plaintiff $13,067.70 in attorney's fees in this case.

¶ 29   A careful review of the record demonstrates that defendant owed plaintiff the due diligence fee, the amount of the earnest money deposit, and attorney's fees incurred during the legal proceedings undertaken to recover those fees. In view of

the fact that these terms are clear and unambiguous and the fact that the parties agreed to them, we are unable to discern any reason for concluding that the Offer to Purchase and Contract does not constitute a written "obligation to pay money" or an "evidence of indebtedness" pursuant to N.C.G.S. § 6-21.2. In addition, we are unable to see why the limitation upon the amount of attorney's fees set out in N.C.G.S. § 6-21.2 should hinder plaintiff's ability to recoup attorney's fees incurred in defense of the judgment that she obtained before the magistrate. As a result, for all of these reasons, the decision of the Court of Appeals is affirmed.

AFFIRMED.

Justice BERGER dissenting.

The Court's approach today marks a significant change in the jurisprudence of our State. Because the majority has turned away from the principle that "the non-allowance of counsel fees has prevailed as the policy of this state at least since 1879," *Stillwell Enters., Inc. v. Interstate Equip. Co.*, 300 N.C. 286, 289, 266 S.E.2d 812, 814 (1980), I respectfully dissent.

This Court previously stated that "[a]lthough [N.C.]G.S. [§] 6-21.2 was not itself codified as a constituent section of Chapter 25 of the General Statutes (the Uniform Commercial Code [or UCC]), we believe its legislative history clearly demonstrates that it was intended to supplement those principles of law generally applicable to commercial transactions." *Id.* at 293, 266 S.E.2d at 817. Relying on *Stillwell*, the Court of Appeals has held that there is "no basis in North Carolina law for the allowance of attorney's fees in a dispute arising out of a contract for the sale of real property." *Forsyth Mun. Alcoholic Beverage Control Bd. v. Folds*, 117 N.C. App. 232, 238, 450 S.E.2d 498, 502 (1994). Thus, N.C.G.S. § 6-21.2 is not applicable to this case and recovery of attorney's fees is not permitted by the statute.

Even assuming that recovery of attorney's fees was allowable here, subsection 6-21.2(2) sets forth a specific formula to be used in calculating allowable attorney's fees absent such a formula or designation in the contract, as is the case here. Because no such formula is stated in the contract, the statutory formula must be used in

calculating attorney's fees. The majority today expands the application of section 6-21.2 beyond what this Court has previously determined to be the intent of the legislature by failing to utilize the calculation method expressly called for in the statute.

¶ 33 "[T]he jurisprudence of North Carolina traditionally has frowned upon contractual obligations for attorney's fees as part of the costs of an action." *Stillwell*, 300 N.C. at 289, 266 S.E.2d at 814 (quoting *Supply, Inc. v. Allen*, 30 N.C. App. 272, 276, 227 S.E.2d 120, 123 (1976)). The rule has "long obtained" that attorney's fees are not awarded "unless such a recovery is expressly authorized by statute[,] . . . [e]ven in the face of a carefully drafted contractual provision indemnifying a party for such attorneys' fees." *Id.* at 289, 266 S.E.2d at 814–15 (citation omitted); *see also Baxter v. Jones*, 283 N.C. 327, 330, 196 S.E.2d 193, 196 (1973) ("Except as so provided by statute, attorneys' fees are not allowable."). In other words, a statute must expressly allow for recovery of attorney's fees before a court can order payment of the same.

¶ 34 Section 6-21.2 allows for recovery of reasonable attorney's fees for collection "upon any note, conditional sale contract or other evidence of indebtedness." N.C.G.S. § 6-21.2 (2021). When applying N.C.G.S. § 6-21.2, we have instructed that the statute " 'should be construed liberally to accomplish the purpose of the Legislature and to bring within it all cases fairly falling within its intended scope.' " *Stillwell*, 300 N.C.

at 293, 266 S.E.2d at 817 (quoting *Hicks v. Albertson*, 284 N.C. 236, 239, 200 S.E.2d 40, 42 (1972)).

¶ 35    The majority contends that "*Stillwell* reflects a much more expansive interpretation of the relevant statutory language" to include any written "evidence of indebtedness." This interpretation would allow collection of attorney's fees for any case in which there is written evidence of a legally enforceable debt. This determination runs counter to this Court's stated goal in *Stillwell* to interpret the statute based on the legislature's purpose in enacting the law and its subsequent determination that the statute's purpose was to supplement laws intended to govern commercial transactions.

¶ 36    The term "evidence of indebtedness" is used throughout the General Statutes of North Carolina to refer to notes, securities, mortgages, deeds of trust, and similar written documents.[1] *See, e.g.,* N.C.G.S. § 25-9-109(d)(14) (2021); N.C.G.S. § 45-36.3(a)

---

[1] The majority appears to quote this language in footnote 3 to support its expansive reading. However, the majority omits "or similar documents" from the quoted language. This omission is meaningful because a lease of equipment is a "similar document." For example, in a mortgage, title remains with the seller while the buyer makes installment payments until the debt is paid off. While not exactly the same, a lease contemplates an ongoing debt relationship in which an owner of property retains title while the terms of the lease are satisfied. In addition, a lease is also similar to the definition of a conditional sales contract, which is defined as "[a] contract for the sale of goods under which the buyer makes periodic payments and the seller retains title to or a security interest in the goods." *Retail Installment Contract, Black's Law Dictionary* (11th ed. 2019); (the definition of conditional sales contract in *Black'*s says *see Retail Installment Contract*); *see also North Carolina Estate Settlement Practice Guide* § 18:5 (2013).

At any rate, while the lease in *Stillwell* is similar to a mortgage or a conditional sales contract, it is clearly distinguishable from a residential real estate contract like the one at

(2021); N.C.G.S. § 47-20(d) (2021); N.C.G.S. § 53-232.10(a) (2021); N.C.G.S. § 54B-244(b)(3)(h) (2021); N.C.G.S. § 58-7-173(1), (6)–(7) (2021); N.C.G.S. § 78A-2(11) (2021); N.C.G.S. § 115C-413 (2021); N.C.G.S. § 122D-3(4) (2021).  The residential sales contract here is far different from the written evidence of indebtedness contemplated by the statute.

Furthermore, the majority's reading of *Stillwell* as an "expansive interpretation" of section 6-21.2 goes against North Carolina's history of barring the recovery of attorney's fees unless expressly authorized by the legislature.  Because this Court previously determined that the legislature intended section 6-21.2 to apply solely to commercial transactions under the UCC, it should not be applied to a private sale of real property.  Our inquiry should end there.

However, even if we assume that section 6-21.2 applies, the majority disregards the statutory formula set forth therein concerning the calculation of attorney's fees.  Subsection (2) of this statute, expressly provides that

> [i]f such note, conditional sale contract or other evidence of indebtedness provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the "outstanding balance" owing on said note, contract or other evidence of indebtedness.

---

issue in this case because a residential real estate contract does not on its face contemplate an ongoing debt relationship between the buyer and seller and does not provide for installment payments or one party retaining title to the property.

N.C.G.S. § 6-21.2(2).

¶ 39        The contract at issue states that if legal proceedings are brought "to recover the Earnest Money Deposit, the prevailing party in the proceeding shall be entitled to recover . . . reasonable attorney fees." If section 6-21.2 applies here, as the majority holds, the 15% limitation on recovery is applicable because the contract gives no specific formula for calculating attorney's fees. The statute does not provide any alternative calculation method.

¶ 40        Instead, the trial court based the amount granted for attorney's fees in this case, $13,067.70, on an attorney's affidavit of fees incurred. The majority justifies this amount based on a single Court of Appeals decision to award attorney's fees based on the attorney's time spent on an appeal in order to make it "economically feasible" to defend a judgment. *See City Fin. Co. of Goldsboro v. Boykin*, 86 N.C. App. 446, 450, 358 S.E.2d 83, 85 (1987).

¶ 41        The legislature has never authorized payment of attorney's fees based on an attorney's time spent on a case. Furthermore, the statute at issue in *City Fin. Co. of Goldsboro*, N.C.G.S. § 75-16.1, is similar to N.C.G.S. § 6-21.1, which differs significantly from the statute at issue here. Section 6-21.1 provides no formula for attorney's fees to be awarded and only applies to recovery of attorney's fees in suits for personal injury, suits for property damage, or suits against insurance companies; none of which are at issue today.

¶ 42 The statute at issue today is clear: to determine the proper amount for attorney's fees we simply ascertain the outstanding balance of the contract and award fifteen percent of that amount. N.C.G.S. § 6-21.2(2). Here, the contract designates that "[i]n the event of breach of this Contract by Buyer, the Earnest Money Deposit shall be paid to Seller as liquidated damages and as Seller's sole and exclusive remedy for such breach." It further states that this amount "is compensatory and not punitive, [with] such amount being a reasonable estimation of the actual loss that Seller would incur as a result of such breach." This provision clarifies that it does not preclude the seller from the right to retain the due diligence fee, which a separate section designates as $2,000, but it also expressly states that the award of attorney's fees is "to recover the Earnest Money Deposit." Thus, the contract ties the recovery of attorney's fees directly and exclusively to the earnest money deposit.

¶ 43 Having determined that section 6-21.2 applies, subsection (2) calls for recovery of attorney's fees based on a percentage of the outstanding balance. The contractual provision at issue expressly ties attorney's fees to the earnest money deposit. Therefore, the proper calculation of attorney's fees would be: $2,500 (earnest money deposit) x 15% (statutory rate) = $375 (in attorney's fees). There is no basis for an award of $13,067.70 under any statute, and such a large award would appear to incentivize costly litigation.

Ultimately, the majority's decision to allow the collection of attorney's fees in any case involving written evidence of a debt, and to allow the collection of any amount of attorney's fees spent defending such a judgment, including on appeal, are policy decisions that have no statutory basis. "The General Assembly is the 'policy-making agency [of this State]' because it is a far more appropriate forum than the courts for implementing policy-based changes to our laws." *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 169, 594 S.E.2d 1, 8 (2004). Regardless of whether these changes may be perceived as beneficial for litigants, the justice system, or this State, they have no basis in our General Statutes, and any such a policy shift should be undertaken by the legislature, not this Court.

Justice BARRINGER joins in this dissenting opinion.